UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA A. COSTELLO,

                                Plaintiff,                    16-CV-0576Sr

v.

CAROLYN W. COLVIN,
**Commissioner of Social Security,**

                                Defendant.

_____

## DECISION AND ORDER

        As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

        Plaintiff filed an application for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability since October 1, 2013 due to Chronic Obstructive Pulmonary Disease ("COPD"), high blood pressure, asthma, swollen legs and sleep apnea. Dkt. 6, pp.73-80 . A hearing was held before Administrative Law Judge Timothy M. McGuan on November 20, 2015, at which plaintiff and an impartial vocational expert, Michele Erbacher, appeared and testified. Dkt. 6, pp.72-97. Plaintiff was represented by counsel. The ALJ rendered a determination that plaintiff was not

disabled on December 24, 2015. Dkt. 6, p.41. The Appeals Council denied plaintiff's request for review on May 9, 2016. Dkt. #6, p.5.

Plaintiff commenced this action seeking review of the Commissioner of Social Security's ("Commissioner's"), final decision on July 15, 2016. Dkt. #1. Currently before the Court is plaintiff's motion for judgment on the pleadings (Dkt. #10), and defendant's motion for judgment on the pleadings. Dkt. #12.

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2013; (2) plaintiff's obesity and sleep apnea constituted severe impairments but her complaints of dyspnea/shortness of breath did not rise to the level of severe impairments; (3) plaintiff's impairments did not

meet or equal any listed impairment; (4) plaintiff retained the capacity to perform light work, except that she could have only occasional exposure to dust, fumes or gases, and could perform her relevant past work as a ticket agent and customer service representative. Dkt. #6, pp.42-49.

Plaintiff argues that the ALJ improperly rejected Dr. Palazzo's August 2015 opinion that plaintiff was totally disabled due to COPD and hypertension and should have developed the record as to plaintiff's prescription of oxygen. Dkt. #10-1, pp.15-18. Plaintiff also argues that it was improper to rely upon Dr. Siddiqui's October 18, 2013 consultative examination because it was conducted prior to the onset and treatment of plaintiff's dyspnea. Dkt. #10-1, p.20.

The Commissioner argues that Dr. Palazzo's opinion was not supported by objective medical evidence as he was not treating plaintiff for her cardiac complaints and had not prescribed oxygen for her. Dkt. #12-1, pp.12-13. The Commissioner disputes plaintiff's argument that the record was incomplete given that Dr. Avino's August 25, 2015 treatment note indicating that plaintiff was improving on home oxygen was in the record and consistent with plaintiff's testimony that she began using oxygen during the night approximately three months prior to her November 2015 hearing. Dkt. #12-1, p.13. The Commissioner notes that plaintiff's attorney stated at the hearing that the administrative record was complete, with the exception of treatment records unrelated to the issues on appeal. Dkt. #12-1, p.14. The Commissioner also notes that plaintiff's subjective complaints did not correlate with clinical or objective medical findings. Dkt. 12-1, p.17.

> In assessing plaintiff's complaints of dyspnea, the ALJ determined that
>
>> Many tests were run and observations show nothing to support any particular lung disease of COPD as she claims. Pulmonary function tests were normal and doctors say they cannot determine the etiology of her complaints.
>
> Dkt. #6, p.47. More specifically, the ALJ opined that
>
>> The allegation of total disability is not fully credible and is not supported by the medical evidence of record. Although the record shows the claimant does have the impairments noted above, the symptoms do not cause the degree of limitation alleged. She testified inconsistently with the record. Most of what she testified in court is not shown objectively. I cannot find anything regarding the need to elevate her legs or them being swollen on examination. Her lung examinations were normal and pulmonary function tests were normal. Other tests by [sic] cardiologist were normal. Doctors cannot find etiology for her "claimed" dyspnea and shortness of breath on exertion. The claimant's hypertension was benign. Therefore, I find her not credible.
>
> Dkt. #6, p.49. With respect to the opinion evidence from Dr. Siddiqui and Dr. Palazzo, the ALJ determined that
>
>> Dr. Siddiqui . . . is given great weight as the opinion that the claimant has no limitations is supported by the objective clinical examination of the claimant as well as by objective evidence in the record. Pulmonary function tests were normal and there is no evidence of swelling in the legs or the need to keep her feet elevated. Dr. Palazzo . . . is given no weight as the opinion of total disability is not supported by any objective evidence and appears to be based on the claimant's subjective statements.
>
> Dkt. #6, p.52.

The ALJ's determination is based on the correct legal standard and supported by substantial evidence. Plaintiff testified that her primary care physician, Dr. Palazzo, diagnosed her with COPD in October of 2014, when she was 57. Dkt. #6,

p.81.  In October of 2014, Dr. Palazzo signed an Initial Claim Report for Disability Insurance indicating that plaintiff was disabled due to COPD, sleep apnea and shortness of breath as of October 2, 2014.  Dkt. #6, p.256.  Also in October of 2014, Dr. Palazzo signed a Notice of Proof of Claim for Disability Benefits indicating that plaintiff was disabled due to COPD, sleep apnea and hypertension as of October 1, 2014.  Dkt. #6, p.257. In August of 2015, Dr. Palazzo signed a Disability Claim from CUNA Mutual Group indicating that plaintiff was disabled due to COPD and hypertension, stating that plaintiff was following up with a pulmonologist and also treating with Dr. Avino "for heart and known oxygen."  Dkt. #6, p.598.  However, Dr. Palazzo's medical records contain no information substantiating a diagnosis of COPD.  To the contrary, Dr. Palazzo's records contain copies of diagnostic testing conducted during October of 2014 indicating "[n]o acute cardiopulmonary abnormality (Dkt. #6, p.517), "shortness of breath is out of proportion to the underlying pulmonary function study" (Dkt. #6, p.518), "right heart catheterization was completely within normal limits (Dkt. #6, p.518), "[o]ngoing dyspnea etiology remains unclear," (Dkt. #6, p.518), as well as a cardiology stress test dated April 24, 2015 indicating  "Stress/Rest Cardiolite Myocardial Scan Using Lexi-Scan Is Normal" (Dkt. #6, p.570).  "While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record."  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

The ALJ's determination that the medical record does not support a diagnosis of COPD is supported by the medical evidence in the record.  A coronary

angiography conducted on February 21, 2012, albeit prior to her alleged onset of disability, revealed "[e[ssentially normal coronary arteries" with "[n]ormal LV systolic function." Dkt. #6, pp.291-92. A Stress Echocardiography Report dated March 20, 2013, prior to alleged onset of disability, noted "no ischemic ST segment changes" in response to stress and "[n]o 2D echocardiographic evidence of inducible ischemia to achieved workload," as well as "[o]verall left ventircular systolic function is normal." Dkt. #6, p.334. A cardiologist report from August 9, 2013, two months prior to alleged onset of disability, noted oximetry at rest and after ambulation at more than 96% and opined that plaintiff was asymptomatic "with no ischemic symptoms." Dkt. #6, pp.297-303. A pulmonary function test conducted on August 14, 2013, was essentially normal, demonstrating "a mild gas exchange abnormality but no evidence for any obstructive or restrictive process." Dkt. #6, p.472. On September 6, 2013, one month prior to alleged onset of disability, The Pulmonary Group of WNY, LLP ("Pulmonary Group"), opined that

> The etiology of the dyspnea is unknown. Her cardiac studies were unrevealing. Her PFT did show a reduced DLCO but there is no evidence for pulmonary hypertension or recent tobacco use. I will defer to Dr. Roche to look for anemia as I was unable to obtain her most recent blood work. She does not have obstruction or restriction on her PFT. Her exam is also normal. Deconditioning may be the cause of her dyspnea so I encourage exercise and weight management. Overall there are no obvious pulmonary causes for her dyspnea.

Dkt. #6, p.475. The Pulmonary Group determined that there was "no pulmonary limitation to work." Dkt. #6, p.475.

Plaintiff also presented to her primary care physician's office on September 6, 2013, stating that,

> she becomes extremely SOB with minimal exertion, such as walking or carrying a laundry basket and states this has been ongoing for years. She states many family members have died from cardiopulmonary disease and she is extremely concerned about her present [symptoms]. She wants to go on disability for this; we discuss that she has not demonstrated any medical necessity for this.

Dkt. #6, p.426. After consulting with Dr. Roche, plaintiff was informed that

> there is no indication for why she is feeling chronically SOB other than her [abnormal] sleep study.[1] Pt is also obese and there is possibly an element of deconditioning involved. Discussed with pt that we will honor the work excuse she was given through 9/13 but beyond that, we cannot fill out disability paperwork . . . as there is no indication to do so.

Dkt. #6, p.428. Sleep Medicine Centers of WNY also declined to complete disability paperwork for plaintiff on September 9, 2013. Dkt. #6, p.485.

On October 18, 2013, Dr. Siddiqui completed an internal medicine examination on behalf of the Division of Disability Determination, diagnosed plaintiff with hypertension and sleep apnea and determined that "there are no limitations in the claimant's ability to sit, stand, climb, push, pull, or carry heavy objects." Dkt. #6, p.497. Although this examination was completed just after her alleged onset of disability, the medical records subsequent to this examination do not provide objective medical evidence of COPD. On August 12, 2014, for example, Buffalo Cardiology & Pulmonary Associates, P.C. ("Buffalo Cardiology & Pulmonary"), observed that a "pulmonary

---

[1] Sleep Medicine Centers of WNY diagnosed plaintiff with severe obstructive sleep apnea on August 6, 2013. Dkt. #6, p.432.

function test completed today did not reveal any significant airflow obstruction." Dkt. #6, p.606. The doctor opined:

> I believe the patient's major problem is her untreated severe obstructive and central sleep apnea. Unfortunately, she has been unable to tolerate a BiPAP machine.

Dkt. #6, p.606. On October 2, 2014, Buffalo Cardiology & Pulmonary noted that plaintiff was unable complete a CPAP titration study and opined that plaintiff's "[d]yspnea out of proportion to the underlying pulmonary function studies," and considered "[p]ossible deconditioning" and the effects of "[s]evere obstructive sleep apenea." Dkt. #6, p.609. On October 7, 2014, plaintiff admitted that "she's rarely ever used her previous BiPAP therapy" because she cannot tolerate it, and Buffalo Cardiology & Pulmonary noted that plaintiff had "essentially normal CT and PFT" with "[n]o evidence of ischemic heart disease." Dkt. #6, p.614. A right heart catheterization at Buffalo General on October 8, 2014 revealed "[n]ormal resting pulmonary artery pressures with minimal rise with 3 minutes of leg exercise." Dkt. #6, pp.615 & 767. On October 28, 2014, Buffalo Cardiology & Pulmonary opined that plaintiff's

> shortness of breath is out of proportion to the underlying pulmonary function study. She did had [sic] right heart catheterization was completely within normal limits.

Dkt. #6, p.518. Mercy Hospital issued the following observations on April 23, 2015:

> Her chest x-ray was personally reviewed, and it showed no acute cardiopulmonary issues. Her CT of the chest was also done and personally reviewed, and it did show no PE and no other acute findings. . . . EKG was done and personally reviewed, and it showed a sinus rhythm, somewhat leftward axis but no ischemia.

Dkt. #6, p.562.

The ALJ's assessment of plaintiff's credibility is also supported by the record. In addition to the disparity between plaintiff's complaints of shortness of breath and diagnostic results, the ALJ noted the absence of evidence regarding plaintiff's claim that she needs to elevate her swollen legs. Plaintiff testified at the hearing that she elevates her feet above her heart at least five times a day for about an hour at a time because her legs, especially her right leg, swells. Dkt. #6, p.95. Treatment records from plaintiff's initial primary care physician, Dr. Roche, indicate edema on June 4, 2012, prompting a change in her blood pressure medication and instruction that plaintiff increase her physical activity, wear compression stockings and elevate her legs above the level of her heart when sitting or sleeping. Dkt. #6, p.399. Subsequent to that one observation, however, there is no mention of edema and examination of plaintiff's lower extremities by multiple health care providers, including Dr. Roche, The Pulmonary Group, Buffalo Cardiology & Pulmonary, Gastroenterology Associates, LLP, Mercy Hospital and Dr. Avino, between 2012 and 2015 record the absence of edema (Dkt. #6, pp.398, 402, 407, 415, 418, 424, 474, 477, 484, 496, 548, 559, 604, 606, 610, 688, 694, 704 & 709). Where the ALJ "gives specific reasons for finding the claimant not credible, the ALJ's credibility determination 'is generally entitled to deference on appeal.'" *Daniels v. Berryhill*, 270 F. Supp.3d 764, 775 (S.D.N.Y. 2017), *quoting Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013); *See Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (determinations as to the credibility of witnesses are reserved to the Commissioner, not the reviewing court).

Finally, although plaintiff argues that the ALJ should have developed the record regarding plaintiff's use of oxygen, plaintiff's attorney agreed that the medical

evidence was complete, with the exception of a records relating to a resolved condition. Dkt. #6, p.72. Dr. Avino's treatment record, dated August 25, 2015, recorded that plaintiff was "currently on home oxygen with improvement" under history of present illness. Dkt. #6, p.703. Plaintiff testified that she uses oxygen every night, beginning three months prior to her hearing date, because she stops breathing. Dkt. #6, pp.80-81. This use of oxygen is consistent with the ALJ's assessment of plaintiff's sleep apnea as a severe, albeit non-disabling, impairment. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Riley v. Colvin*, 211 F. Supp.3d 638, 651 (S.D.N.Y. 2016), *quoting Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1996).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is **DENIED**, and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is **GRANTED.**

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
October 3, 2018

    *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**